UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MARR PETER BROWN,

    Plaintiff,

        v.                                CAUSE NO. 1:23-CV-349-JD-JPK

STEPHEN TEGTMEYER, et al.,

    Defendants.

## OPINION AND ORDER

Marr Peter Brown, a prisoner proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) Under 28 U.S.C. § 1915A, the court must review the complaint to determine whether the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Brown is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

This lawsuit stems from Mr. Brown's Indiana criminal conviction for attempted murder. *Brown v. State*, 175 N.E.3d 364 (Table), 2021 WL 4434798 (Ind. Ct. App. Sept. 28,

2021). The Indiana Court of Appeals set forth the facts underlying his conviction as follows:[1]

> In September 2017, James Walker met Brown and developed a business relationship with him in which Walker would sell marijuana for Brown. At some point, Brown believed Walker owed him $100,000. In 2018, they had a disagreement over their relationship and money. . . .
>
> On December 19, 2018, Walker, who was unarmed, went to Kroger with his niece, Chaquasha Smith, and her three-month-old baby. Walker began shopping and, while he was holding the baby, encountered Brown at the end of an aisle. Walker laughed and said, "Yeah, I talked to your people. You're trying to kill me. I talked to your people." Brown looked at Walker and smiled, and Walker went his way and continued to shop. Walker encountered Brown again and said: "Bro, how you gonna try to get somebody to try to kill me when we was doing business together? You didn't hold up to your end and I did what I did and you got mad because you didn't hold up to your end of the deal, so you felt I took something from you, I felt I didn't. I felt you owe me."
>
> Brown became mad, said "[o]kay," and put his hand in his hoodie pocket. Walker looked at him, became mad, set the baby down, and "confronted him again and [Brown] shot" him. The first shot struck Walker in the back of the arm, and he "took off running . . . to try to get out of harm's way." Brown chased Walker and shot him in the back of the leg from behind. At some point, Walker fell to the ground, noticed he was shot in the leg, and began crawling away. Brown left Walker for a period of time. Walker turned around to try to see where Brown was and saw him walking towards him. Brown extended his arm, pointed the gun at Walker's face, and attempted to fire, but the gun "must have malfunctioned."
>
> Tony Banks, who was in the store with two of his children and their mother, Cassandra Brown ("Cassandra"), was "right next" to Walker when he was shot and saw the second shot. Banks started yelling at Brown "and asking him like what's wrong with him, why he's shooting, my kids are right here." Brown left the store and was later taken into custody.

---

[1] The court is permitted to take judicial notice of public records at the pleading stage. *See* FED. R. EVID. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647 (7th Cir. 2018).

2

> The first bullet shattered the bone in Walker's upper arm. The second bullet struck the main artery in his leg and stomach. Walker's stomach and arm were reconstructed, and he underwent eight surgeries and spent almost two months in the hospital. His leg is partially paralyzed "until the nerves grow back, because it hit the main artery."

*Id.* at *1-2 (internal citations, headnotes, and footnotes omitted). Mr. Brown was convicted of attempted murder and his conviction was affirmed on appeal. *Id.* at *2-6.

Mr. Brown then pursued federal habeas relief challenging his conviction. *Brown v. Warden*, No. 3:22-CV-422-JD-MGG, 2022 WL 2116650 (N.D. Ind. June 13, 2022). He argued that "the prosecution's failure to call the victim's treating physicians as witnesses violated his right to compulsory process," and that the prosecution "presented . . . false testimony" about the victim's injuries. *Id.* at *1. The court found that both of his claims were procedurally defaulted. *Id.* To excuse his default, he argued actual innocence. *Id.* In evaluating this claim, the court considered the medical evidence and concluded that it was consistent with the victim's testimony. *Id.* at *2-3. The court also found nothing contradictory in the medical records Mr. Brown presented, or any evidence to suggest the records had been altered as he claimed. *Id.* The court concluded that he did not meet the actual innocence exception and denied habeas relief. *Id.*

Mr. Brown then filed a federal lawsuit against three physicians and the records custodian at Parkview Regional Medical Center in Fort Wayne, Indiana, where the shooting victim obtained medical treatment. *Brown v. Parkview Regional Medical Center*, 1:23-CV-262-HAB-SLC (N.D. Ind. closed Aug. 1, 2023). He asserted that one of the physicians made conflicting statements in his medical notes, and the other physicians "signed off" on these notes, which in his view "violated my due process because

3

without the correct facts, the information that's being told to the jurors was incorrect, which . . . impede[d] my development of any favorable defense." (ECF 14 at 4-5.) He further claimed that he was denied a "fair trial" because of alleged discrepancies in the medical evidence. (*Id.* at 5.) He sought $5 million in damages and other relief. (*Id.* at 4.)

The court concluded that he failed to state a claim under 28 U.S.C. § 1915A. As was explained in the order of dismissal, the defendants were not state actors, and even if they could be deemed state actors, his claims rested on a presumption that his conviction was invalid. Such claims were barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). He was instructed that he could not pursue a civil claim that implied the invalidity of his conviction unless his conviction was reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.[2] The case was dismissed on August 1, 2023.

Less than a month later, Mr. Brown filed the present case. This time he sues a Fort Wayne homicide detective, a city attorney, and the two attorneys who represented him in his criminal case. His complaint is in places difficult to parse. However, it can be discerned from the complaint and attachments that has been trying to obtain release of the victim's medical records through various means, including through a state statute authorizing access to public records, IND. CODE § 5-14-3-1 *et seq.*, with only partial success. He states that he is in the process of pursuing state post-conviction relief and the attorney representing him in that proceeding obtained the client files that were in

---

[2] Because he already pursued federal habeas relief, he would have to follow the procedures set forth in 28 U.S.C. § 2244(a) before filing any successive petition.

4

the possession of his criminal attorneys, but he claims certain items were missing. He asserts that his criminal attorneys "violated the Plaintiff's Sixth and Fourteenth Amendment right to due process" by failing to give him the missing items or to use them to pursue a defense at trial. As best as can be discerned, he claims that the homicide detective violated his due process rights by failing to turn over this evidence for his use at trial.

Mr. Brown fails to state a plausible federal claim. His criminal defense attorneys are not state actors who can be sued for constitutional violations. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). To the extent he is claiming they provided ineffective assistance during his criminal trial in violation of the Sixth Amendment, such a claim is barred by *Heck* because it necessarily implies the invalidity of his criminal conviction. *Petrunak v. Krofta*, 858 F. App'x 922, 925 (7th Cir. 2021) (claim asserting ineffective assistance by counsel was barred by *Heck*). The same analysis applies to a claim that the detective committed a due process violation during trial by failing to turn over certain evidence. *Camm v. Faith*, 937 F.3d 1096, 1111 (7th Cir. 2019) ("a *Brady* claim does not accrue until the criminal proceedings terminate in the defendant's favor").

As to the city attorney, Mr. Brown invokes the Freedom of Information Act ("FOIA"), but that statute applies to federal government agencies, not municipalities. *See* 5 U.S.C. § 101. A claim that the city attorney violated his rights under a state statute governing access to public records does not give rise to a federal claim. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws"). Relatedly, he moves for the

issuance of subpoenas (ECF 4, 5, 6, 7) to try to obtain the documents that way, but discovery is inappropriate because he has not been granted leave to proceed on any claim under 28 U.S.C. § 1915A.

"Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Machine*, 191 F.3d 790, 794 (7th Cir. 1999) (citations omitted); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024-25 (7th Cir. 2013). However, "that does not mean it must always be given." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). "[C]ourts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Id.* (citation omitted).

This is Mr. Brown's second federal lawsuit in which he appears to be trying to skirt the *Heck* bar. "The favorable-termination rule [in *Heck*] is more than a procedural hurdle that plaintiffs can skirt with artful complaint drafting . . . . Rather, it is grounded in substantive concerns about allowing conflicting judgments." *Morgan v. Schott*, 914 F.3d 1115, 1122 (7th Cir. 2019). He does not have a viable FOIA claim against city officials, nor can he use federal discovery tools to obtain evidence without asserting a federal claim. The court finds no basis to conclude that if given another opportunity, he could assert a plausible federal claim, consistent with what he has already alleged under penalty of perjury. It would therefore be futile to permit him to amend.

For these reasons, this action is DISMISSED under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted. The clerk is DIRECTED to close this case.

SO ORDERED on November 21, 2023

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT